Matthias, J.
These three cases present the same question. Each of the appellants was an authorized dealer under contract with Gunnison Homes, Inc., a corporation, located at New Albany, Indiana, engaged in the business of manufacturing and selling prefabricated houses. Its product is known as a “Gunnison Home Package” which consists of a dwelling constructed mostly of plywood with optional features, which may or may not be made of plywood, and with trimmings such as shutters, window boxes, window trim, pilasters, entrance hoods, and accessories such as storm windows, all prefabricated and disassembled and requiring erection by the dealer at the proposed home site.
*341 Each of the appellants was engaged in the business of selling these homes and erecting them on lots owned by the purchasers thereof. In each such case the appellant in addition to the erection of the Gunnison homes furnished all labor, erecting materials and equipment used in the erection of the dwellings including in most instances foundations and stoops, bought and installed plumbing and electrical appliances and other equipment and provided site improvements and landscaping.
The record in each case discloses that the proposed purchasers of these homes entered into agreements with the appellant on dealer’s sales order forms, furnished to the dealer by Gunnison Homes, Inc. By the terms of these sales orders, the agreements were “solely between the owner and dealer” and no responsibility other than a warranty of the workmanship of the parts furnished was assumed by Gunnison Homes, Inc. The dealer agreed with owners to furnish “all labor and materials'” and to “complete the home in a good and workmanlike manner.” The price fixed by the sales contract was a specified sum for which the entire construction project was to be performed and this sum included not only the cost of the parts purchased from Gunnison, but also the additional materials and equipment purchased by the dealer and installed as above enumerated.
The record discloses in each case that these orders were checked for accuracy by Gunnison Homes, Inc., before being accepted by the dealer whereupon financing arrangements were made by the owners with a bank, the down payment, in addition to any mortgage granted, being deposited in escrow with the bank and the homes were then ordered from Gunnison by the dealer. In each instance the dealer would then begin to prepare the foundation. The home was shipped either by freight or by truck consigned to Gunnison Homes, *342 Inc., with a sight draft attached to the bill of lading directed to the bank and a notation to notify the deaLer. The full price of the ‘‘Gunnison-Home Package” was 'paid from funds in escrow with the bank before title thereto passed. The price at which the home was billed to the dealer was 15 per cent less than the list price shown by the sales contract, such discount being intended to cover the cost of labor involved in the erection of the house and the dealer’s profit on the sale. In most instances the dealer completed his contracts with the owners and took as his profit the balance remaining in the escrow accounts after the owners had approved and accepted the dwellings.
The “dealers’ franchise contract” between Gunnison Homes, Inc., and the appellants contained the following statement:
“ It is distinctly understood that this agreement contemplates that dealer will acquire dealer’s own facilities in accordance with dealer’s discretion and will purchase company products as dealer’s own and resell them to customers selected by dealer, all in conformity with the requirements and limitations specified but otherwise in dealer’s own discretion.”
The records disclose also that the form prescribed by Gunnison Homes, Inc., entitled “Dealer’s Plant Order ’ ’ and by which the appellants ordered the homes involved from Gunnison, contained the following language :
“20. Taxes: Dealer will pay any taxes imposed by any law of the United States, any state, or municipality, or other taxing authority upon the use or sale of the company products shipped hereunder, or upon the ownership thereof after title shall have passed to dealer.”' .
Much evidence was offered'by the appellants showing in detail their method of operation but the above summary is sufficient'upon which to predicate the legal *343 question in issue which is whether under the facts presented the appellants were “consumers” of the “Gunnison Home Packages” within the purview of the “use and storage tax.” (Section 5546-25 et seq., General Code.) In considering this question reference must necessarily be had to the pertinent parts of such act.
Section 5546-26, General Code, provides, in part, as follows:
“Each consumer, storing, using, or otherwise consuming in this state tangible personal property purchased for such purpose or purposes, shall be liable for the tax imposed by this act, and such liability shall not be extinguished until the tax has been paid to this state * #
Section 5546-25, General Code, defines “consumer” and “purchase” as follows.:
“ 1 Consumer’ means the persons who shall have purchased tangible personal property for storage, use, or other consumption in this state. ’ ’
“ ‘Purchase’ means acquired for a consideration, whether the transaction by which such acquisition was -effected [was] by a transfer of title, or of possession, or of both, or a license to use or consume; whether such transfer shall have been absolute or conditional, and by whatsoever means the same shall have been effected * * (Emphasis in above quotations supplied.)
It is the contention of the appellants that they were not consumers as that term is therein defined but that the consumers were the owners who purchased the dwellings and that therefore the Board of Tax Appeals erred when it affirmed the assessments of the use tax made by the Tax Commissioner against the appellants. They refer particularly to the provisions of Tax Commissioner’s Eule 27, as then in effect, which provided as follows:
‘ ‘ Construction contracts as considered in the defini *344 tion of ‘sale’ in Section 5546-1, General Code, fall within two distinct classifications:
“First — a construction contract, pursuant to: which tangible personal property is or is to be incorporated into a structure or improvement where the consideration for such incorporation is agreed upon, charged or paid separately from the consideration for the performance of the other contractual obligations.
‘ ‘ Second — all other construction contracts.
“Contracts falling within the first classification render the contractor the vendor of the materials used in construction * * *.
“Construction contracts falling within the second classification render the contractor a consumer of all articles which he uses or consumes in the fulfilling of his contractual obligations and he must pay the tax on the purchase of all materials * * (Emphasis supplied.)
It is the contention of the appellants that they come within the second provision of this rule. The Board of Tax Appeals in its decisions agrees with appellants ’ position and holds that by reason thereof they are required by the last paragraph in the said rule to pay the tax on the use and storage of all the materials purchased, among which were the ‘ ‘ Gunnison Home Packages.”
It would seem that the mere statement of the facts disclosed by the records establishes the position of the appellants to be that of consumer. By the terms of both the contract between the appellants and Gunnison Homes, Inc., and that between the appellants and the owners and also by the trade practices followed by the appellants, they are consumers of the “Gunnison Home Packages” in the same manner as they are of other materials admittedly purchased by them and incorporated in the dwellings during the process of erection. Therefore, the facts, as disclosed by (he records, *345 bring the contracts between the appellants and the owners within the definition of “construction contracts” in Tax Commissioner’s Rule 27, and by virtue of that rule appellants are required, as consumers, to pay the tax on the use and storage of all construction materials so purchased.
The decision of the Board of Tax Appeals in each case, which applied Rule 27 and thereby affirmed the assessment by the Tax Commissioner, was not unreasonable or unlawful.
The decision of the Board of Tax Appeals in each ease is affirmed.

Decisions affirmed.

Weygandt, C. J., Zimmerman, Stewart, Middleton, Taet and Hart, JJ., concur.